FILED
2006 Jul-11  PM 03:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

NATHAN LEE BOYD,

      Petitioner,

v.                       CASE NO. CV-04-J-2336-NW

DONAL CAMPBELL, et al.,

      Respondents.

## <u>MEMORANDUM OPINION</u>

This is a petition for a writ of habeas corpus brought by a person in custody under a judgment of a state court of the State of Alabama, 28 U.S.C. § 2254. The petitioner, Nathan Lee Boyd, was tried before a jury and convicted of capital murder committed in the course of a robbery for the stabbing death of Joseph Daniel "Danny" Sledge. The jury unanimously recommended that Petitioner be sentenced to life without parole. On January 5, 2001, the trial court accepted the jury's recommendation and sentenced Petitioner to life imprisonment without the possibility of parole. Petitioner filed a motion for a new trial on February 2, 2001. This motion was denied by the trial court on February 5, 2001.

Petitioner, represented by new counsel, subsequently appealed his

conviction directly on numerous grounds.  The Alabama Court of Criminal

Appeals affirmed Petitioner's conviction and sentence by memorandum opinion

on February 22, 2002.  The Court found Petitioner did not preserve for review

issues concerning the allegedly illegal search, curative instructions in response to

undisclosed evidence, the prosecutor's reliance on "personal expertise," the

allegedly invalid indictment, the allegedly improper participation by an assistant

district attorney, and the trial court's denial of two of Petitioner's requested jury

instructions.  The Court also found Petitioner's ineffective assistance of counsel

claims were not preserved for review on direct appeal but had to be brought in a

Rule 32 petition because Petitioner was represented by the same counsel at trial

and in his motion for a new trial.  The Court also found that the trial court did not

violate any duty to insure that the search was legal; that Petitioner failed to show

evidence of pretrial publicity sufficient to warrant a change in venue and that any

pretrial publicity affected the members of the jury; that the trial court properly

denied Petitioner's motion for mistrial related to undisclosed evidence; and that

Petitioner failed to show that the assistant district attorney who had previously

represented Petitioner improperly participated in the trial.  After the Court of

Criminal Appeals denied Petitioner's Application for Rehearing, the Supreme

Court of Alabama denied Boyd's petition for writ of certiorari without opinion and

issued its certificate of judgment on September 13, 2002.

Petitioner filed a petition for post-conviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure on September 12, 2003.  He supported his petition with an "Explanation for New Ground(s) of Relief Pursuant to Rule 32" and exhibits.  On October 14, 2003, the State filed a "State's Response to Defendant's Petition for Relief," attaching affidavits from Assistant District Attorney James R. Engenthaler and one of Petitioner's trial counsel, Jean Darby.

On October 29, 2003, the trial court issued a detailed written order denying Petitioner's petition, individually addressing each element.  On November 5, 2003, Petitioner filed a "Motion to Reconsider Dismissal of Nathan Boyd's Rule 32," arguing that the trial court had improperly denied his petition "summarily" and without giving Petitioner an opportunity to respond to the State's motion to dismiss.  To his motion to reconsider, Petitioner attached "Nathan Boyd's Answer to State's Response to Defendant's Petition for Relief," which contained further argument in favor of his petition but no further evidentiary support.  The trial court denied Petitioner's motion to reconsider on November 6, 2003.

The Court of Criminal Appeals affirmed the trial court's denial of Petitioner's Rule 32 petition in an unpublished memorandum issued on April 23, 2004, and overruled his application for rehearing on May 21, 2004.  The Supreme

3

Court of Alabama denied Petitioner's petition for writ of certiorari without opinion on August 13, 2004, issuing the certificate of judgment on the same date.

On July 28, 2004, Petitioner filed a writ of habeas corpus petition and a "Motion to Hold 28 U.S.C. § 2254 in Abeyance until Supreme Court of Alabama Rules on Petition for Certiorari."  This court granted Petitioner's motion to hold petition in abeyance on August 9, 2004.  On September 1, 2004, this court granted Petitioner's motion to return case to active docket and ordered Petitioner to file an amended petition.  On November 1, Petitioner filed a motion for leave to file out of time amended petition and an amended petition, raising the following claims:

A.     The state court failed to give him a full and fair hearing on his Rule 32 petition, denying him his Sixth Amendment right to confrontation;

B.     He was denied effective assistance of counsel in violation of the Sixth Amendment; and

C.     The State engaged in prosecutorial misconduct denying him a fair trial.

On November 8, 2004, this court entered an order requiring Respondents to show cause why Petitioner's amended habeas corpus petition should not be granted.  On December 7, 2004, this court granted the Respondents an enlargement of time in which to respond to Petitioner's petition, ordering that the response be filed on or by December 13, 2004.

4

### A.    THE STATE COURT'S FAILURE TO GIVE PETITIONER A HEARING ON HIS RULE 32 PETITION

Petitioner's federal habeas allegation that he was denied his Sixth Amendment right to confrontation when the trial court denied his Rule 32 petition without his response to the State's response or an evidentiary hearing is not cognizable in federal habeas proceedings.  The Eleventh Circuit has held that "...where a petitioner's claim goes to issues unrelated to the cause of petitioner's petition, that claim does not state a basis for habeas relief." *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987).  *See also*, *Quince v. Crosby*, 360 F.3d 1259, 1261 (11th Cir. 2004).   Petitioner's claim based on alleged errors occurring during collateral proceedings in the instant case is such a claim and does not form the basis for habeas relief.

Even if Petitioner's claim were cognizable, it would be without merit. Title 28 U.S.C. § 2254(d) provides the standard under which a federal habeas court should review a state court's application of federal law as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

5

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003), the United States Supreme Court stated:

In order for a federal court to find a state court's application of our precedent "unreasonable," the state court's decision must have been more than incorrect or erroneous.  See *Lockyear, supra*, at 75, 123 S.Ct. 1166. The state court's application must have been "objectively unreasonable." See *Williams v. Taylor, supra*, at 409, 120 S.Ct. 1495.

Petitioner has failed to direct the court to any United States Supreme Court precedent showing how the state courts' adjudication of his confrontation claims was contrary to or an unreasonable application of clearly established federal law. In fact, the First and the Eighth Circuits have held that the Sixth Amendment right to confrontation does not apply to post-conviction proceedings.  *See Oken v. Warden, MSP*, 233 F.3d 86, 91-92 (1st Cir. 2000); and *Burgess v. King*, 130 F.2d 761, 762 (8th Cir. 1942).

Assuming there were a Sixth Amendment right to confrontation in post-conviction proceedings, Petitioner has failed to assert facts showing any such violation.  The Alabama Rules of Criminal Procedure do not provide for a "response to a response" in Rule 32 proceedings.  Even if the trial court would have allowed such a pleading, Petitioner has failed to show how he was prejudiced

6

by the court disallowing such a pleading.  Petitioner has failed to state a reason for

his failure to attach affidavits to his original Rule 32 petition and has yet to

produce any such affidavits or allege facts showing the substance of what such

affidavits would contain.  Additionally, because the trial judge who denied

Petitioner's Rule 32 petition was the same judge who presided over Petitioner's

trial, the trial judge was able to use his recollection of the trial to issue a detailed

ruling on the issues raised by Petitioner in his Rule 32 petition, alleviating the

need for an evidentiary hearing.  *See Sheats v. State*, 556 So.2d 1094, 1095 (Ala.

Crim. App. 1989) ("If the circuit judge has personal knowledge of the actual facts

underlying the allegations in the petition, he may deny the petition without further

proceedings *so long as he states the reasons for the denial in a written order*.")

Therefore, Petitioner has failed to show how any right to confrontation has been

violated.  *See also*, AL. R. RCRP 32.7 (d).

### B.   INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Petitioner's allegations of ineffective assistance of counsel are without

merit.  Petitioner has failed to show that the state court's application of Alabama

law was inconsistent with *Strickland v. Washington*, 466 U.S. 668 (1984).  The

record shows that the Alabama state courts applied *Strickland* in an objectively

reasonable manner consistent with clearly established federal law and made a

7

reasonable determination of the facts in light of the evidence.

In Petitioner's Rule 32 proceedings, the trial court and the Alabama Court of Criminal Appeals found that Petitioner's ineffective assistance of trial counsel claims lacked merit.  State's Exhibit L (C. 91-94) and O.  As stated above, the trial judge was able to rely on his personal recollection of the trial to determine that trial counsel was effective and to issue a detailed ruling on these issues.  The Court of Criminal Appeals included the trial judge's order in its opinion and held that the trial judge was justified in relying on his personal knowledge of the trial.  State's Exhibit O. pp. 2-6.

The record shows that the determinations of the state courts were objectively reasonable applications of *Strickland* as the performance of Petitioner's trial counsel was not deficient.  The trial court properly denied Petitioner's claim concerning an alleged illegal search of the apartment in which he was staying because the underlying issue is contradicted by the record.  State's Exhibit L (C. 91).  In fact, the Court of Criminal Appeals had determined this very issue to be without merit on direct appeal, correctly holding that the search was constitutionally permissible based upon the consent of Petitioner's brother, Eric Boyd.  Eric Boyd had standing to consent to the search because he was a joint occupant of the premises.  State's Exhibit E, p. 12.  See *United States v. Matlock*,

415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974) (consent may be

obtained from "a third party who possess[es] common authority over or sufficient

relationship to the premises or effects sought to be inspected.").

   As the evidence shows that Petitioner and Eric Boyd had joint access to the

searched premises, Eric Boyd had authority to give his consent to the search.

Although Petitioner alleged on direct appeal that he had standing to contest the

consent of Eric Boyd, Petitioner has never alleged that he actually contested Eric

Boyd's consent or that such consent was insufficient to justify the search.

Accordingly, he has failed to alleged sufficient facts showing that the consent to

search was insufficient.  Also, the Alabama Court of Criminal Appeals properly

found that the search of the apartment occurred before Petitioner's arrest and could

not have been the product of an illegal arrest.  *Boyd v. State*, CR-00-1224, at p. 12.

Therefore, Petitioner has failed to allege sufficient facts that show that the search

of the apartment was illegal or that his trial counsel was ineffective for failing to

preserve such an issue.  Therefore, the state court's determination that Petitioner's

allegations of ineffective assistance of counsel is without merit is affirmed.

   The trial court also properly found that Petitioner's claim that his trial

counsel was ineffective for failing to prove the need to change venue because of

pretrial publicity was without merit.  State's Exhibit L (C. 91).  In ruling upon this

issue in Petitioner's Rule 32 petition, the trial judge stated that "[t]he issue of

pretrial publicity and prejudice attendant thereto was thoroughly explored with the

venire during *voir dire*."  Reviewing the record supports the trial judge's

conclusion that trial counsel's performance in attempting to prove the need for a

change of venue was not deficient.  In *Snyder v. State*, 893 So.2d 488 (Ala. Crim.

App. 2003) the Court of Criminal Appeals stated:

> A defendant "is not entitled to jurors who are totally ignorant of the facts
> and issues of the case." *Ex parte Neal*, 731 So.2d 621, 624 (Ala. 1999).  The
> proper means of determining whether pretrial publicity has rendered it
> impossible for a defendant to receive a fair trial is through voir dire
> examination.  *Duke v. State*, 889 So.2d 1 (Ala. Crim. App. 2002).  "[A]
> change of venue will be granted only if the defendant shows that the pretrial
> publicity has 'so pervasively saturated' the community 'as to make the court
> proceedings nothing more than a "hollow formality."'" *Neal*, 731 So.2d at
> 624.

During voir dire, the trial court preliminarily asked all potential jurors if they had

previously heard or heard something about the case.  State's Exhibit A (R. 161-

164).  Petitioner's trial counsel was then allowed to question each prospective

juror individually regarding how exposure to pretrial publicity affected his or her

ability to remain impartial.  State's Exhibit A (R. 295-434).  Trial counsel asked

each juror detailed questions about how he or she had been exposed to the case

and whether he or she could remain impartial despite such exposure.  *Id.* (R. 295-

434).  Trial counsel then argued that fifteen of the perspective jurors expressed at

10

some level that Petitioner was guilty and that venue should therefore be changed. *Id.* (R. 435-436). The trial court found that "the pretrial publicity had not been so pervasive as to affect the defendant's ability to choose a fair and impartial jury from this pool" and denied the motion to change venue. *Id.* (R. 437).

Petitioner failed to allege what his trial counsel could have done to have secured a change in venue, such as asking follow-up questions on voir dire or making a specific argument. Additionally, Petitioner failed to allege that he received an unfair jury as a result of any pretrial publicity, specifying jurors who were unable to remain impartial. Petitioner simply recited the Court of Criminal Appeals's finding that Petitioner's claim on direct appeal was unsupported because he merely made general allegations of pretrial publicity.

The trial court properly found that Petitioner's trial counsel was not ineffective for failing to ask for curative instructions after becoming aware that the State had inadvertently failed to turn over a witness's statement. State's Exhibit L (C. 91-92). The trial judge was again able to use his recollection of the remedial measures that were taken and the effect of the oversight. Furthermore, Petitioner has failed to specifically allege facts showing how he was irreparably prejudiced by any failure to disclose the statement or how curative instructions would have affected the outcome of his trial.

The statement at issue concerned State's witness Jarrod LeMay who testified that, before Sledge's murder, Petitioner had told him that he desired to rob and kill Sledge.  State's Exhibit A (R. 838-839).  All parties were aware before trial that LeMay had revealed Petitioner's disclosure to a private investigator nearly a year after Sledge's murder.  *Id.* (R. 843).  However, both parties were surprised when LeMay testified on cross-examination that he had come forth with his statement shortly after the murder by discussing it with the sheriff's department.  *Id.* (R. 849-850).  As it turned out, Investigator Richard Richey had inadvertently failed to hand the statement to the prosecutor.  *Id.* (R. 851-853).

Petitioner's counsel argued at trial that the defense was prejudiced by the failure to disclose the statement because its cross-examination of LeMay was to be based upon attacking LeMay's credibility through his waiting almost a year to come forward with his story.  *Id.* (R. 858-859).  This defense was frustrated not by the failure to disclose the statement but by the earlier statement itself.  The fact that LeMay had told his story to the sheriff's department shortly after the murder rather than the State's failure to disclose the statement was the factor undercutting the defense's attack on LeMay's credibility.  The State's failure to disclose this statement simply delayed the ability of the defense to see the futility of its line of defense.

12

The record shows that any prejudice caused by the failure to timely disclose LeMay's earlier statement was sufficiently removed by the remedial measures that were taken by the trial court, which allowed Petitioner's trial counsel to interview LeMay regarding his earlier statement and prohibited the State from asking LeMay about the earlier statement on redirect. *Id.* (R. 871).  By employing this remedy, Petitioner's counsel was highly effective in cross-examining LeMay about the earlier statement despite the delay in its disclosure.  On cross-examination, Petitioner's counsel was able to highlight the fact that LeMay had given very little detail in his earlier signed statement to the sheriff's department and that he seemed more concerned with stating that he was not involved in the murder. *Id.* (R. 884-885).  In fact, Petitioner's counsel was able to emphasize that LeMay's written statement to the sheriff's department did not even mention Sledge's name. *Id.* (R. 887).  Finally, cross-examination revealed that, despite supplying much more detail than in the statement given shortly after the murder, LeMay refused to sign the statement he gave nearly a year later and testified that he merely told the private investigator what he wanted to hear. *Id.* (R. 889-891).  The record shows that Petitioner's trial counsel undercut LeMay's credibility as much as possible and that any prejudice caused by the failure to disclose the earlier statement had been removed.  Petitioner failed to allege how counsel could have more effectively

13

cross examined LeMay had she had more time to prepare, what curative instructions would have been necessary, and how Petitioner's case was prejudiced by a failure to request such instructions.  Therefore, the claim was properly denied.

The Rule 32 judge properly relied on his own recollection in determining that the prosecutor's expression of personal opinions during closing argument was not highly inflammatory and that Petitioner's trial counsel was not ineffective for failing to object to such comments.  State's Exhibit L (C. 92).   During closing argument, the prosecutor prefaced many of his comments with the words, "I think" and, when discussing evidence showing that Petitioner held Sledge while his brother stabbed him, stated "I submit to you that's what happened in this case." State's Exhibit A (R. 1027-1028).  Such comments are not a cause for reversal.  In *Sams v. State*, 506 So.2d 1027, 1029 (Ala. Crim. App. 1986), the Court of Criminal Appeals stated:

> While it is never proper for the prosecutor to express his personal opinion as to the guilt of the accused during closing argument, reversible error does not occur when the argument complained of constitutes mere expression of opinion concerning inferences, deductions and conclusions drawn from the evidence.

The prosecutor's statements as used at trial amount to no more than such expressions.  Petitioner's trial counsel cannot be deemed ineffective for a failure to object.

14

The trial court properly found that Petitioner's claim that his trial counsel was ineffective for failing to preserve an issue regarding Petitioner's allegedly invalid indictment was without merit.  State's Exhibit L (C. 92).  Petitioner argued that his indictment did not comply with Section 15-8-70 of the Code of Alabama because it was not presented to "at least 11 other jurors."  State's Exhibit M, pp. 33-34.  The Alabama Court of Criminal Appeals has held, however, that trial counsel cannot be deemed ineffective for failing to object to an indictment's non-compliance with Section 15-8-70 because "the fundamental power of the court to proceed with the prosecution" is not affected by the "failure of the grand jury foreman to endorse the indictment 'a true bill.'" *Reed v. State*, 748 So.2d 231, 234 (Ala. Crim. App. 1999).

The trial judge properly relied on his own recollection in determining that Petitioner's trial counsel was not ineffective for failing to move for a mistrial due to alleged participation in the trial by Assistant District Attorney Engenthaler, who had previously represented Petitioner in another unrelated matter.  State's Exhibit L (C. 92).  The record shows that Engenthaler represented the State during one pretrial motion hearing in which Petitioner requested the court's approval for extraordinary expenses.  State's Exhibit A (R. 53-60).[1]  Engenthaler did not

---

[1] Citations to pretrial motion hearings are designated by "R1".

15

oppose the granting of expenses to copy photographs and the trial court granted

Petitioner's request for investigator expenses after an ex parte discussion with

defense counsel. *Id.* (R. 53-60). It is inconceivable how any confidential

information learned by Engenthaler from his representation of Petitioner could

have affected the proceedings. During pretrial motion hearings, Petitioner's

counsel informed the trial court that Petitioner was uncomfortable with

Engenthaler's participation and that trial court granted Petitioner's motion to

disqualify Engenthaler. *Id.* (R. 84-85). Petitioner argued on direct appeal that the

record reflected that Engenthaler violated the trial court's order by continuing to

participate in the proceedings and that Petitioner should be given a new trial. *Id.*

(R. 291). Petitioner simply cited one passage in the trial transcript indicating that

Engenthaler participated in a side bar during trial. *Id.* (R. 291). However, the trial

judge was able to rely upon his own recollection in determining that the reference

to Engenthaler during the sidebar was a typographical error and that Engenthaler

did not participate in the trial. State's Exhibit L (C. 92). The record does not

show any significant participation by Engenthaler in Petitioner's prosecution.

The trial judge properly found that Petitioner's trial counsel was not

ineffective for failing to properly object to the denial of two of his requested

instructions. State's Exhibit L (C. 92). As these instructions were adequately

covered by the instructions actually given by the trial court, the failure to give these instructions was not in error.  *See Akers v. State*, 399 So.2d 929, 931 (Ala. Crim. App. 1981) (charges which "were fairly and substantially covered in the oral charge of the trial court...were therefore properly refused").

One of the requested instructions refused by the trial court, Petitioner's Requested Instruction #5, was adequately covered by Petitioner's Requested Instruction #4.  State's Exhibit ( C. 244).  Petitioner's Requested Instruction #5 stated:

> The Court charges the jury that in order to convict the defendant of an intentional murder or capital murder, the State must prove beyond a reasonable doubt that Nathan Boyd had the specific intent to kill.

*Id.* (C. 244).  However, the Alabama Court of Criminal Appeals stated in *Kinder v. State*, 515 So.2d 55, 65 (Ala. Crim. App. 1986), that, when the defendant admits to participating in the underlying felony but denies participation in the killing, the trial court must charge the jury on the requisite intent to kill to support a finding of a "particularized intent to kill."  Because this language was covered in Petitioner's Requested Instruction #4, Petitioner was not prejudiced because the jury was not instructed on the "specific intent to kill" language found in Requested Instruction #5, which would have been redundant.

The trial court also properly denied the second portion of Petitioner's

Requested Instruction #7, which provided:

> The Court further charges the jury that proof of an accomplice in a robbery case does not necessarily mean proof of an accomplice in a murder.  These are separate and distinct offenses.

State's Exhibit A (C. 245).  The principle of accomplice liability for a capital murder was covered more directly when the trial court charged the jury on the elements of complicity generally as requested by Petitioner in the first part of Requested Instruction #7, as well as the following:

> A person commits an intentional murder if he causes the death of another person and in performing the act or acts which cause the death of that person, he intends to kill that person.... A defendant who does not personally commit the act of killing which constitutes the murder is not guilty of a capital offense unless that defendant is legally accountable for the murder because of complicity in the murder itself in addition to being guilty of the other elements of the capital offense.

*Id.* (C. 245; R. 1070, 1072).  Petitioner was not prejudiced by his trial counsel's failure to properly object to the refused instructions because the instructions refused by the trial court were substantially and fairly covered by the oral charge.

As discussed previously, Petitioner's trial counsel was not ineffective for failing to argue that Petitioner had standing to challenge the lawfulness of the searches because the searches were lawfully based on the consent given by Petitioner's brother.

The trial judge properly found the Petitioner's claim that his trial counsel

was ineffective for failing to call two convicts as witnesses during the guilt phase of this trial was without merit.  State's Exhibit L (C. 92-93).  These two convicts, Mario Green and Percy Russell, testified during the penalty phase of the proceedings that, while fellow inmates of Eric Boyd, Boyd confessed to them that he stabbed Sledge after Sledge tried to stab Petitioner.  State's Exhibit A (R. 1201-1202, 1205).  However, as the trial court found, such testimony would have constituted inadmissible hearsay during the guilt phase.  State's Exhibit L (C. 93). *See Watkins v. State*, 509 So.2d 1056, 1062 (Ala. Crim. App. 1983) (witness's testimony that two third parties confessed to crime would have been inadmissible hearsay and "therefore irrelevant and incompetent to prove appellant's innocence"); and *Thomas v. State*, 452 So.2d 899, 902 (Ala. Crim. App. 1984) (police testimony that Thomas's accomplice confessed to committing the murder alone was inadmissible hearsay).  Therefore, the trial court correctly found the Petitioner's trial counsel was not ineffective for failing to call Green and Russell as witnesses during the guilt phase of the trial.

Ultimately, the Alabama state courts' determination that Petitioner's counsel was not ineffective was objectively reasonable and consistent with clearly established federal law.

### C.    PROSECUTORIAL MISCONDUCT CLAIM

Petitioner's claim that the State engaged in prosecutorial misconduct by taking different positions in his trial and his brother's trial has been procedurally defaulted.  Petitioner failed to exhaust his remedies by failing to raise this issue on direct appeal.  While Petitioner did raise the issue in his Rule 32 petition, the trial court properly found that such an argument was not cognizable in a Rule 32 petition.  Petitioner could have objected to such alleged prosecutorial misconduct at trial and raise the issue on direct appeal, as such an issue is constitutional rather than jurisdictional.  Therefore, it was precluded under Rule 32.2(a)(3) and (5) of the Alabama Rules of Criminal Procedure.  Petitioner also failed to raise this argument during the appeal of the denial of his Rule 32 petition or in his petition for writ of certiorari before the Supreme Court of Alabama.  Failure to exhaust state court remedies becomes "a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  Federal habeas claims not included in a petition for discretionary review with the state's highest court are procedurally defaulted if the time for including such issues in such a petition has expired.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  As Petitioner did not raise any issue concerning the State's alleged contrary positions in any of his direct appeal proceedings or in the appeal of his

Rule 32 petition, including his petition for certiorari before the Supreme Court of Alabama, and the time for seeking such remedies has long expired, this claim has been procedurally defaulted.

It is therefore found that Petitioner's Petition for a writ of habeas corpus is due to be dismissed.

An appropriate order will be entered.

DONE this 11th day of July 2006.


INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE